IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

H. LESTER WALD, et al.,                          )
                                                 )
                    Plaintiffs,                  )
                                                 )
v.                                               )          No. CIV-04-1693-C
                                                 )
MUDHOPPER OILFIELD SERVICES,                     )
INC., et al.,                                    )
                                                 )
                    Defendants.                  )

## MEMORANDUM OPINION & ORDER

Following a trial in a patent infringement action, the jury returned a verdict that
Defendants infringed Plaintiffs' patent (the Wald patent) through sales activities related to
Poly Drill Sticks, a product used in the treatment of oil wells.  The jury awarded damages in
the amount of $76,017.84 for the infringement based on Defendants' sales of 14,335 Poly
Drill Sticks and $1,000.00 based on sales of 200 Hole Sweep Sticks, a similar product that
the parties stipulated infringed the Wald patent.  (Dkt. No. 70.)  The jury also found, by
special interrogatory, that Defendants' infringement was willful.  (Dkt. No. 69.)

Accordingly, Plaintiffs move for judgment to include, in addition to the damages
awarded by the jury, an award of prejudgment interest, reasonable attorney fees, increased
damages, costs, and post-judgment interest.  Plaintiffs also ask the Court to enter an
injunction barring sales activities related to Hole Sweep Sticks, Poly Drill Sticks, or any
other infringing variation of those products and to deny relief on Defendants' counterclaims.
In a supplemental motion, Plaintiffs also request the Court to award damages based on sales
of Poly Drill Sticks between January 18, 2006 and the jury's verdict.  In response,

Defendants contend that the Court should deny Plaintiffs' requests for attorney fees, increased damages, and an injunction and that an award of damages based on sales after January 18 should be limited. Defendants further contend that costs should not be awarded because Plaintiffs were only partially successful.

I.      Attorney Fees

35 U.S.C. § 285 permits the Court to "award reasonable attorney fees to the prevailing party" "in exceptional cases." Faced with a such a request, the Court must first determine whether there is clear and convincing evidence that the case is exceptional. Interspiro USA, Inc. v. Figgie Int'l Inc., 18 F.3d 927, 933 (Fed. Cir. 1994). "A case may be deemed exceptional when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates [Federal Rule of Civil Procedure] 11, or like infractions." Brooks Furniture Mfg., Inc. v. Dutailier Intern., Inc., 393 F.3d 1378, 1381 (Fed. Cir. 2005). Second, the Court must determine whether, in its discretion, an award of attorney fees is warranted. Interspiro, 18 F.3d at 933-34. In exercising that discretion, the Court must "weigh the relevant considerations, such as the closeness of the case, the tactics of counsel, the flagrant or good faith character of the parties' conduct, and any other factors contributing to imposition of punitive sanctions or to fair allocation of the burdens of litigation." Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Intern., Inc., 389 F.3d 1370, 1379 (Fed. Cir. 2004).

Although there are sufficient reasons to support an award of increased damages, as set out below, the Court finds that this case is not "exceptional" and determines that, even if it were, an award of attorney fees would not be warranted.   The jury found that Defendants' infringement was willful; however, a willfulness finding does not mandate an award of attorney fees.   See Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1461 (Fed. Cir. 1998).   Defendants admittedly failed to respond to certain discovery in a timely fashion, necessitating a motion to compel, and Defendant Brooks was apparently unable to answer certain product-related questions in deposition.   However, although that conduct may be relevant to the question of whether continued sales of Poly Drill Sticks was reasonable, it does not rise to the level of litigation misconduct contemplated by 25 U.S.C. § 285.   Having considered all of the relevant circumstances, the Court denies Plaintiffs' request for attorney fees.

2.     Increased Damages

35 U.S.C. § 284 authorizes the Court, following an award of damages to compensate for infringement, to "increase [those] damages up to three times the amount found or assessed."   Increased damages are punitive and based on two requirements.   Jurgens v. CBK, Ltd., 80 F.3d 1566, 1570 (Fed. Cir. 1996).   "First, the fact-finder must determine whether an infringer is guilty of conduct upon which increased damages may be based [e.g., willful infringement].   If so, the [C]ourt then determines, exercising its sound discretion, whether, and to what extent to increase the damages award given the totality of the circumstances."   Id.   Thus, the egregiousness of Defendants' conduct is the focus of this inquiry, in which the

3

Court is guided by the following factors:  whether Defendants deliberately copied the ideas or design of Plaintiff Wald;  whether Defendants, when they knew of the Wald patent, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; Defendants' behavior as parties to the litigation; Defendants' size and financial condition; the closeness of the case; the duration of Defendants' misconduct; remedial action taken by Defendants; Defendants' motivation for harm; and whether Defendants attempted to conceal their misconduct.  Read Corp. v. Portec, Inc., 970 F.2d 816, 827 (Fed. Cir. 1992), abrogated on other grounds by Markman v. Westview Instruments, Inc., 52 F.3d 967, 975 (Fed. Cir. 1995).

   Based on a totality of the circumstances, the Court finds that damages should be increased.  Here, the jury found that Defendants' infringement, related to sales of the Hole Sweep Stick and the Poly Drill Stick, was willful.  There was evidence that Defendant Brooks knew about the Wald polymer sticks no later than 2001, and it was undisputed that his initial product, the Hole Sweep Stick, literally infringed the Wald patent.  Although Defendants discontinued their sales of the Hole Sweep Stick upon learning of the Wald patent in 2004, they continued to sell the Poly Drill Sticks until the time of trial.

   There is ample evidence that Defendants did not promptly investigate the scope of the Wald patent (with respect to the Poly Drill Stick product) or otherwise have a reasonable basis for continuing their sales of Poly Drill Sticks.  Brooks did not know, as late as his deposition, the precise ingredients of his polymer sticks.  (Pls.' Ex. 2 at 26.)  Although a corporate executive might not normally be expected to know such specifics, under the

4

circumstances, his unfamiliarity shows a lack of investigation.    Moreover, Defendants

proffered different rationales throughout this litigation for why sales of the Poly Drill Stick

did not violate the Wald patent, including that the patent was invalid and that the accused

product (the Poly Drill Stick) lacked a container.  Defendants did not fully explain the basis

for their invalidity argument before trial and abandoned it by trial.  For whatever reason,

Defendants also elected not to pursue a reliance on the advice of counsel defense at trial.[1]

The failure to articulate or consistently maintain a position with respect to continued sales

suggests that Defendants did not have a reasonable or good faith (as opposed to sincere)

belief that the sales were not infringing.

In addition, although there was no clear evidence that Defendants specifically

intended to harm Plaintiffs or that they attempted to conceal their sales activities,

Defendants' conduct as a party to this litigation was less than desirable.  Trial counsel

assumed responsibility for the failure to file timely discovery responses or secure an

extension that necessitated a motion to compel during the discovery period.  (Dkt. No. 20.)

However, Brooks' own testimony at trial was, in places, in conflict with other evidence, his

own deposition testimony, and his lawyer's representations.  The Court considers such

---

[1]  Considerable attention is paid in the briefs to the October 2004 letter from James
Robinson, Defendants' trial counsel, as relevant to the issue of whether continued Poly Drill Stick
sales were based on a good faith belief that the Wald patent was not valid. (See, e.g., Pls.' Reply at
1-2.)  As an initial matter, the copy of this letter, attached as Defs.' Ex. 4, to a third-party contains
only a cursory conclusion that the Wald patent is invalid.  An actual "infringement opinion" is not
in the record.  Nor did Defendants pursue a reliance on the advice of counsel defense at trial.  At
most, Defendants' Response suggests that Brooks genuinely believed that he should be and was free
to continue selling Poly Drill Sticks.  Brooks himself shared this sentiment with the jury at trial.
Nevertheless, as explained above, other evidence shows that his belief was not reasonable.

behavior indicative of a lack of forthcomingness, which, at a minimum, supports the finding that the continued sales were objectively unreasonable.

Other factors also weigh in favor of increasing Plaintiffs' damages. Defendants continued to sell Poly Drill Sticks for more than a year and half after learning of the Wald patent. There was evidence that Defendant Mudhopper used these sales to promote other products. (Tr. at 239.) This evidence, when considered in conjunction with Mudhopper's size and financial condition, is such that compensatory damages are insufficient.[2] Finally, although the Court concluded that the Poly Drill Sticks did not literally infringe the Wald patent, whether or not that ruling rendered the case "close," it does not outweigh the other considerations supporting increased damages.

After determining that damages should be increased, the Court must decide how much to increase the award. The amount to award as increased damages may not exceed twice the amount awarded as compensatory damages, but the amount of that increase is a matter of judicial discretion. See Hockerson-Halberstadt, Inc. v. Propet USA, Inc., 62 Fed. Appx. 322, 331-32 (Fed. Cir. 2003) (upholding application of a multiplier of 1.2 rather than 3 when enhancing damages). Again, the Court must consider the goals behind the award of enhanced damages and the Read factors identified above. Id.

---

[2] Defendant Brooks testified that Mudhopper was a "one-stop shop," "a one-source provider," and provided better service by offering a range of products as opposed to being a specialty (mud, equipment or chemical) company. (Tr. at 239.) According to Brooks, sales of the Poly Drill Sticks accounted for "[l]ess than one percent" of Mudhopper's total business. (Tr. at 239.)

In this case, the Court finds that the compensatory damages awarded for Defendants' infringement of the Wald patent through sales of Poly Drill Sticks should be trebled. However, the Court will not treble the amount of compensatory damages awarded for the infringement based on sales of the Hole Sweep Sticks.  Defendants immediately ceased sales of that product upon learning of the patent and stipulated to infringement at trial.  Therefore, although the jury found that infringement to be willful, the Court declines to award increased damages based on those sales.

3.      Accounting for Infringement After January 18, 2006

In a supplemental motion, Plaintiffs ask for an accounting of Defendants' post-January 18, 2006, sales of Poly Drill Sticks and that the Court award damages, compensatory and increased, based on those sales.  Defendants agree that an accounting is appropriate (see Defs.' Resp. at 11-12); however, they disagree that an award based on those sales should be calculated using the $9.71/stick figure that Plaintiffs propose.  Defendants argue that although "the jury accepted the overall lost profits figure calculated by Plaintiffs' expert," "it is too speculative to assume . . . that a jury . . . would be willing to award Plaintiffs $9.71 per stick, a figure almost twice that of the reasonable royalty [of $5.00 per unit] testified to by Plaintiffs." (Defs.' Resp. at 12.)[3]  Instead, Defendants contend that the Court should use an average per unit net profit of $5.30/stick, based on Poly Drill sticks sold from December

_____

[3]  The difference in per unit net profit calculated for different periods of time is caused by a change in the price at which Plaintiffs sold their product.  (Tr. at 193.) On September 1, 2005, Plaintiffs increased their sales price from $10.00 per unit to $15.00 per unit.

3, 2003 until January 18, 2006, and Plaintiffs' sales prices and costs during that period.  (Id. at 13.)

However, Defendants' analysis is flawed.  First, Defendants seemingly agree that the jury found that, but for Defendants' infringing sales, Plaintiffs would have sold an additional number of their own products (covered by the Wald patent) equal to the number of Poly Drill sticks that were sold from December 3, 2003 until January 18, 2006, and, thus, Plaintiffs were entitled to lost profits.  Yet, Defendants also seem to argue that the jury accepted Plaintiffs' proposed lost profit figure, but only because the average per unit net profit ($5.30/stick) was only moderately more than the reasonable royalty rate.[4]  This reasoning conflicts with the jury instructions given.  The jury was instructed that an award of damages should be in an amount to fairly compensate Plaintiffs for Defendants' infringement, if found:

> The damages awarded to Plaintiffs for infringement can be no less than what would have been received had the infringer been paying a reasonable royalty for the use of the patented invention.  However, if Plaintiffs prove damages that are greater than a reasonable royalty, such as lost profits, then you should award them that amount.

(Dkt. No. 68, Jury Instruction No. 8.)  The jury was not invited to award reasonable royalty-plus-some if lost profits were proved.

Second, and more importantly, $5.30/stick would *not* have been the average per unit net profit if the post-January 18 sales had been before the jury (or included in the

---

[4]  The jury awarded Plaintiffs $76,017.84 for Defendants' sales of Poly Drill Sticks through January 18, 2006.  That amount is one cent less than the total net profit figure at which Plaintiffs' accounting expert arrived.  (Tr. Ex. No. 48.).

accountant's spreadsheet).  More likely, the average would have been, when additional sales were considered, approximately $5.82 ($94,466.85 total net profit/16,235 total units).  Stated another way, in a second lawsuit, the modified version of the accountant's spreadsheet would not include any units for sale at $10.00 or a per unit net profit of less than $9.71.  Therefore, if lost profits are recoverable on post-January 18 sales of the Poly Drill Sticks, one could expect damages to be awarded based on the $9.71/stick figure proposed by Plaintiffs but not the $5.30/stick figure suggested by Defendants.

However, although the Court might attempt to make an educated guess about what the jury might have actually awarded if faced with evidence of additional infringing sales, it would still only be a guess.  Nor is the Court in a position to award additional damages, on ascertainable, post-January 18 Poly Drill Stick sales, without making independent factual findings (e.g., whether Plaintiffs would have made any or all of those sales but for Defendants' infringing sales). Therefore, notwithstanding the parties' shared interest in avoiding a second lawsuit, the Court will not, over either party's objection, impose additional damages.  Plaintiffs' supplemental motion for judgment is denied.

4.      Permanent Injunction

Plaintiffs request an injunction barring Defendants (and their agents or employees) from infringing the Wald patent through the manufacture, use, sale, or offer for sale of the Hole Sweep Stick, the Poly Drill Stick, or any colorable variation of those products.   The Patent Act expressly provides that courts "may grant injunctions in accordance with

principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 126 S. Ct. 1837, 1839 (2006) (confirming that permanent injunctions entered in patent infringement cases must be based on the same analysis and considerations as in other types of cases). A permanent injunction must comply with Federal Rule of Civil Procedure 65(d) and, following a finding of patent infringement, should typically be limited to a prohibition against the "manufacture, use, or sale of the specific infringing device, or to infringing devices no more than colorably different from the infringing device." Additive Controls & Measurement Sys. Inc. v. Flowdata, Inc., 986 F.2d 476, 479-80 (Fed. Cir. 1993).

Plaintiffs' request is appropriately limited. And based on the particular facts of this case, a permanent injunction is warranted. As a preliminary matter, the Court finds that Plaintiffs suffered "irreparable harm" for which they have not been compensated. Although "irreparable harm" evades easy definition, it "is often suffered when the injury can[not] be adequately atoned for in money . . . or when the district court cannot remedy [the injury] following a final determination on the merits." Prairie Band of Potawatomi Indians v. Pierce,

253 F.3d 1234, 1250 (10th Cir. 2001) (citations and quotations omitted).  As a result of Defendants' infringement, Plaintiffs suffered injuries in addition to lost sales.  Specifically, Plaintiffs note that they lost market share and "the opportunity to maintain their own polymer stick to as the industry standard" and that their "reputation for innovation" was damaged as a result.  (Pls.' Reply at 8-9.)  Thus, damages, either awarded by the jury or trebled, do not necessarily take into account other items of loss.

The respective hardships to the parties, when balanced, and the public's interest also weigh in favor of a permanent injunction.  Defendants have not identified any specific hardship they might suffer as a result of an injunction.  Instead, Defendants' object to an injunction as unnecessary.  As support, they note the immediate cessation of Hole Sweep Stick sales upon learning of the Wald patent and profess the intention not to sell Poly Drill Sticks again unless the Court enters a judgment of non-infringement.  However, given the finding of willful infringement and because there have been no indications that Defendants do not still possess an inventory of these products or the ability to secure more, the Court is unpersuaded that there is no need for an injunction. Cf. W.L. Gore & Assocs., Inc. v. Garlock, Inc., 842 F.2d 1275, 1281-82 (Fed. Cir. 1988) (noting absence of reason for stopping infringement, failure to profess an intention not to infringe in the future, and the capacity to resume production as supporting the grant of an injunction).  Plaintiffs bear the risk of future infringement, while there appears to be no harm to Defendants or the public's interest resulting from an injunction.  Therefore, the Court finds that equitable considerations support Plaintiffs' request for a permanent injunction on the terms proposed.

5.      Defendants' Counterclaims

Plaintiffs ask the Court to deny relief to Defendants on their counterclaims: one for a declaration of non-infringement and two for a declaration of patent invalidity.  In response, Defendants refer to the arguments raised in their motion for judgment as a matter of law and concede that the issue of invalidity was waived.  Based on the Court's order denying Defendants' motion, there is no basis on which to argue that Defendants are entitled to relief. Therefore, Plaintiffs' request is granted.

6.      Costs and Post-Judgment Interest

Plaintiffs also ask that they be permitted to recover costs as the "prevailing party" in accordance with Federal Rule of Civil Procedure 54(d)(1) and post-judgment interest on the money judgment entered in accordance with 28 U.S.C. § 1961.  Defendants do not challenge Plaintiffs entitlement to post-judgment interest at the statutory rate (or prejudgment interest at the rate requested).  However, Defendants ask the Court not to award costs.

Rule 54(d)(1) provides, "Except [in situations not applicable here], costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs."  Defendants argue that Plaintiffs were not prevailing parties because they were only partially successful.  (Defs.' Resp. at 14.)  The Court does not agree.  Even though Defendants conceded infringement based on sales of the Hole Sweep Sticks, trial was necessary on the issue of damages, which were awarded.  The jury also found that Defendants' sales of the Poly Drill Sticks infringed the Wald patent and awarded Plaintiffs damages.  In addition, the jury found that Defendants' infringement was willful.  Under these

12

circumstances, the Court will not deny Plaintiffs' costs.  Those costs may be taxed by the Court Clerk in accordance with Federal and Local Rules.

CONCLUSION

Accordingly, Plaintiffs' Motion for Judgment (Dkt. No. 73) is GRANTED in part and DENIED in part.  Plaintiffs' Supplemental Motion for Judgment (Dkt. No. 76) is DENIED. Judgement will issue in accordance with the rulings announced herein and include, as damages: $1,000.00 awarded by the jury based on Defendants' sales of Hole Sweep Sticks, $76,017.84 awarded by the jury based on Defendants' sales of Poly Drill Sticks, and $152,035.68 as increased damages.  Plaintiffs are entitled to recover prejudgment interest at the prime rate compounded monthly, post-judgment interest at the statutory rate, and costs. Plaintiffs are also entitled to a permanent injunction as described above.  No accounting will be awarded for sales of Poly Drill Sticks after January 18, 2006, nor will the Court award damages based on those sales for the reasons set forth above.  Plaintiffs shall not recover their attorney fees.

IT IS SO ORDERED this 27th day of July, 2006.

ROBIN J. CAUTHRON
United States District Judge